United States District Court
Eastern District of Virginia
Richmond Division

| | |
|---|---|
| **The PUBLIC INTEREST LEGAL FOUNDATION**<br><br>*Plaintiff*,<br><br>v.<br><br>**LARRY C. HAAKE, in his official capacity as General Registrar for Chesterfield County**<br><br>*Defendant*. | No. 3:16-CV-00836-REP<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

**MEMORANDUM SUPPORTING RESPONSE IN OPPOSITION TO LARRY C. HAAKE'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Plaintiff Public Interest Legal Foundation ("PILF"), through counsel, files this response in opposition to the Defendant Larry C. Haake's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 7).

**SUMMARY OF THE ARGUMENT**

This is an action brought under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq.*, to enforce obligations of election officials to allow inspection and photocopying of election records. 52 U.S.C. § 20507(i)(1). Plaintiff seeks election records from Defendant cataloging the list maintenance of registrations of those registrants found ineligible to vote because of problems with the registrant's United States citizenship status. The Defendant

1

does not contest that he has failed to make the requested records available to Plaintiff. The Defendant has repeatedly refused to provide these list maintenance records even though multiple local election registrars from other jurisdictions in the Commonwealth have already provided Plaintiff the same records for their respective counties. (Compl. ¶ 8-16, 33-34.) Defendant's motion relies entirely on a single statute to deny inspection rights. This statute, part of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 300002(a), 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721, has nothing to do with election list maintenance records or this case. Lastly, Defendant's motion is contrary to the unanimous weight of authority in rulings by the Fourth Circuit Court of Appeals, the United States District Court for the Eastern District of Virginia and other federal courts which have held that list maintenance records must be disclosed, even if the records contain derivative data originally captured by motor vehicle departments or contain arguably private information.

## **12(b)(6) STANDARD**

The standard of review governing a Rule 12(b)(6) motion to dismiss is well established. While a complaint need not contain detailed factual allegations, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A Rule 12(b)(6) motion should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In addition, this Court must "accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to a plaintiff. *Mylan Labs., Inc. v. Matkari*,

7 F.3d 1130, 1134 (4th Cir. 1993). "Rule 12(b)(6)'s purpose is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quotations and citations omitted). A Rule 12(b)(6) motion should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514.

### I. The statute relied on by the Defendant has no relevance to this case.

The Complaint states that, beginning on August 8, 2016, the Plaintiff repeatedly and unsuccessfully sought particular election records from the Defendant. (Compl. ¶ 8-16). The Plaintiff sought, *inter alia*, the list of registrants whose registration the Defendant cancelled due to problems with the registrant's United States citizenship status.

The National Voter Registration Act provides Plaintiff broad rights to inspect election list maintenance records upon request. Records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" must be made available to members of the public upon request directed to a custodian of those records pursuant to the NVRA. 52 U.S.C. § 20507(i)(1). The statute does not merely require the defendant to photocopy the records and at some point mail the records to a requesting party, such as a state freedom of information act statute typically requires. It mandates that defendant "shall make available for public inspection" the records. *Id.* The NVRA public inspection provisions are far more expansive than most typical state freedom of information act statutes, and certainly Virginia's. *Compare* 52 U.S.C. § 20507(i)(1) *with* Va. Code § 2.2-3704(C) (NVRA has no procedure to extend or delay right to immediate inspection of records). The NVRA does not provide a deadline by which an election official must provide

3

the records, and instead relies on the statutory notice period before a suit may be brought found in 52 U.S.C. § 20510(b), a notice period which is not in issue in this motion and has been satisfied by the Plaintiff. Moreover, "where available," requestors have a right to "photocopying at a reasonable cost" of these records. 52 U.S.C. § 20507(i)(1). As we shall see below, courts have interpreted these NVRA public inspection rights to election list maintenance records broadly, and fatally to Defendant's motion to dismiss. Requesting parties may both physically inspect election list maintenance records as well as photocopy them pursuant to 52 U.S.C. § 20507.

The Defendant has denied, and continues to deny, access to publically inspect these records and would not provide duplications to the Plaintiff. (Compl. ¶¶ 11-12). Specifically, on August 8, 2016, the Plaintiff sought the following, as plead in the Complaint:

1. *Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any information source*, including information obtained from the Virginia Department of Motor Vehicles or from the Virginia State Board of Elections since 2011. This request extends to *all documents that provide the name of the registrant, the voting history of such registrant, the nature and content of any notice sent to the registrant, including the date of the notice, the response (if any) of the registrant, and actions taken regarding the registrant's registration (if any) and the date of the action.* This request extends to electronic records capable of compilation.

2. All *communications regarding your list maintenance activities relating to #1* above to the Commonwealth's Attorney, Virginia Attorney General, Virginia State Police, any other state law enforcement agencies, the United States Attorney's office, or the Federal Bureau of Investigation.

3. The total voting-age population in your jurisdiction as of the date of your response; and

4. The total number of voters registered in your jurisdiction as of the date of your response.

(Compl. ¶ 8.) It is true that the Plaintiff's request mentioned documents "including information obtained from the Virginia Department of Motor Vehicles," but the requests went far beyond that category of documents and unambiguously went far beyond motor vehicle records. Indeed, the request detailed in the Complaint included election list maintenance records that facially have nothing to do with the Virginia Department of Motor Vehicles.

**Three Sub-classes of Records Sought**

The request above included requests for these sub-classes of documents, none of which have been provided by Defendant:

a. **Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any information source.**

b. Documents that provide the **names of the registrant** who were identified as potentially not satisfying the citizenship requirements for registration **from any information source**.

c. All documents providing the nature and content of **any notice sent** to any registrant potentially not satisfying the citizenship requirements for registration, including the **date of the notice**, **the response** (if any) of the registrant, and **actions taken regarding the registrant's registration** (if any) and the **date of the action**.

Note that these three subclasses of requested documents listed in the Complaint make no mention of motor vehicle information and specifically seek election list maintenance records having nothing to do whatsoever with motor vehicle records. Nevertheless, Defendant's sole defense relies on a federal statute that has nothing to do with the above three subclasses of list maintenance records: the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 300002(a), codified at 18 U.S.C. § 2721.

A closer examination of the plain language of 18 U.S.C. § 2721 reveals it has nothing to do with this case. It states:

> (a) In General.—A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
>
> (1) personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or
>
> (2) highly restricted personal information, as defined in 18 U.S.C. 2725(4), about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9).

18 U.S.C. § 2721. Personal information is defined by 18 U.S.C. § 2725(3) as: "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." The only possible information sought by the Plaintiff that even appears on this list is a name. As discussed below, Defendant's argument regarding 18 U.S.C. § 2721 would produce an absurd result in interpreting the NVRA public records provisions.

"Highly restricted personal information" is defined by 18 U.S.C. 2725(4) is "an individual's photograph or image, social security number, medical or disability information." Nothing of that sort has even been sought by the Plaintiff. Thus, the only arguable record which 18 U.S.C. § 2721 prevents from release is a name. As discussed below, withholding the name of a registrant is plainly not permitted by the NVRA.

Defendant's reliance on this statute to deny public review of election records is misplaced for multiple reasons. Remember, Plaintiff sought election list maintenance documents from the three classes of records discussed above regarding registration records which were ultimately

*scrutinized or cancelled for problems with citizenship status* of the registrants.[1] Plaintiff's requests were not made to a state motor vehicle agency. The requests were made to the Defendant county general election registrar. Plaintiff's requests do not involve motor vehicle information. They seek list maintenance records of a local registrar tasked with maintaining voter rolls free of non-citizens.

Yet the plain language of the statute relied upon by the Defendant does not pertain to a local general election registrar. The statute relied on restricts only state motor vehicle departments. The statute's reach is limited to a "State department of motor vehicles, and any officer, employee, or contractor." 18 U.S.C. § 2721(a). Defendant is not within the reach of the statute. Defendant is not the Virginia Department of Motor Vehicles. Defendant is not an "officer" of the Virginia Department of Motor Vehicles, nor an "employee." Nor is the Defendant a contractor with the Virginia Department of Motor Vehicles. Contractor is defined as "one that contracts, a party to a bargain: one that formally undertakes to do something for another." Webster's Third New International Dictionary, 2002, or "a party to a contract, 2. More specif., one who contracts to do work or provide supplies for another." Blacks Law Dictionary, 9th ed. 2009. Defendant has no contractual relationship whatsoever with the Virginia Department of Motor Vehicles, much less one envisioned by the term "contactor" in § 2721(a). Defendant is a stand-alone local constitutional office, and not a contractor under § 2721(a).

---

[1] Multiple federal felony statues implicate non-citizens who register to vote. 18 U.S.C. § 611 makes it a felony for non-citizens to vote in federal elections. 18 U.S.C. § 1015 makes it a felony to make false statements, including on voter registration forms, in order to register to vote or to vote in any Federal, State, or local election. 52 U.S.C. § 20511 makes the fraudulent submission of voter registration applications and the fraudulent casting of ballots a felony. It is also a felony for an individual to simply "falsely and willfully represent[] himself to be a citizen of the United States." 18 U.S.C § 911. The Virginia Constitution also mandates that only American citizens may register to vote. Va. Const., Art. II, Sec. 1.

7

Defendant is not even a state officer of any sort. In any event, Defendant carries the heavy burden of a motion to dismiss and has made no showing whatsoever to the contrary that Defendant is a "contractor" as envisioned by § 2721(a). Nor could it because a 12(b)(6) motion may not test "the applicability of defenses." *Presley*, 464 F.3d at 483. Defendant's motion is better suited as an affirmative defense or basis to seek summary judgment.

But the fact that Defendant's office is not covered by the plain meaning on § 2721(a) is just the first of several problems with Defendant's reliance on 18 U.S.C. § 2721. Next, the Plaintiff has sought information from voter registration records, not motor vehicle records. Section 2721 only pertains to motor vehicle records. Plaintiff has not sought records "obtained by the [motor vehicle] department *in connection with a motor vehicle record*" as used in § 2721(1)(emphasis added). It has sought election list maintenance records such as notices mailed by a local election official to potential non-citizens on the registration rolls, the dispositions of those election inquiries by an election official, and records of cancellations of election registrations pursuant to those inquiries.

The Plaintiff's inquiry, as demonstrated by the responses from numerous other general registrars to the Plaintiff across the Commonwealth, has nothing to do with motor vehicle records. For example, Plaintiff included as "Exhibit B" to Plaintiff's Complaint the first page of a response from the Prince William County general registrar to an identical request. Prince William was one of multiple counties which provided, rather than denied, the requested records. Exhibit B does not come from the Virginia Department of Motor Vehicles and plainly contains

no motor vehicle information whatsoever. It is an election list maintenance record, not a motor vehicle record. Plaintiff seeks the same record for the Defendant's county.[2]

The Plaintiff requested election records maintained by the Defendant to conduct voter roll list maintenance. Plaintiff requested records that have nothing to do with the motor vehicle records or state department of motor vehicles covered by 18 U.S.C. § 2721. It is true that Plaintiff's request provided a multipart request "including information obtained from the Virginia Department of Motor Vehicles or from the Virginia State Board of Elections." But the mention of the Virginia Department of Motor Vehicles sourced records was inclusive, not exclusive. Defendant's motion inappropriately lumps all of Plaintiff's discrete requests, no matter the source, into one motor vehicle category – as if Plaintiff had asked for all records "**only** from the Virginia Department of Motor Vehicles." Plaintiff made no such request, and Defendant cannot now rely on a statute which has nothing to do with the three subclasses of records sought.

Finally, if Defendant is actually arguing that any list maintenance record which can trace its heritage to any nexus with a state motor vehicle agency, it has reduced the point to the absurd. The only record the Defendant can plausibly bar under personal information listed in 18 U.S.C. § 2725(3) would be the *name* of the registrant. Defendant's argument would prohibit the release of the name of any registered voter to any party. It would fully eradicate the public records rights enacted by the NVRA (also known as "Motor Voter") when it made both DMV and social service agencies voter registration entities. Motor vehicle agencies are not the only agencies

---

[2] Contrary to assertions made by the Defendant, the Plaintiff has *absolutely not* received the requested records regarding the Defendant's county from any other source or even been offered the same. Even if Plaintiff had received the requested records from any other source, it would not absolve Defendant's obligation under the NVRA to permit an inspection of the same.

9

where voter registration is mandated under the NVRA. Even if motor vehicle records provided to general registrars may not be disclosed, the derivative list maintenance activities certainly must be disclosed, particularly the cancellation of voter registrations.[3] To accept Defendant's argument would obliterate public inspection rights to any election records which can trace its origin to some prior processing by a motor vehicle agency. Accepting Defendant's extreme position would fundamentally reorder the political landscape of the Commonwealth and deny voter information to Legislators and other entities who have relied on it for decades or more. It is *reductio ad absurdum* if a registration record could never be disclosed to anyone if it contained the name of someone that once provided information to a motor vehicle agency pursuant to NVRA.

## II. The Motion to Dismiss should be denied because the unanimous weight of authority supports Plaintiff.

The overwhelming weight of authority supports denial of Defendant's motion and Plaintiff's rights under the NVRA to inspect the requested documents. Under strikingly similar circumstances, the United States District Court for the Eastern District of Virginia, the Fourth Circuit and other federal courts found that public inspection and information rights under the NVRA support denial of the Defendant's motion. *See Project Vote v. Long*, 682 F.3d 331, 334-335 (4th Cir. Va. 2012) (affirming summary judgment in favor of plaintiff NVRA records requestor); *Project Vote/Voting for America v. Long*, 752 F. Supp. 2d 697, 703-704 (E.D. Va.

---

[3] For example, Plaintiff's three subsets of requested records detailed in this response do <u>not</u> include any records subject to Virginia Code Ann. § 24.2-410.1(B), which is a motor vehicle department non-citizen list. To the extent that Plaintiff was denied inspection rights to that discrete subset of information sought (and which is plainly not contained in the three classes detailed in this response), any denial based on Virginia Code Ann. § 24.2-410.1(B) would be invalid based on the Supremacy Clause and inspection rights to list maintenance records under 52 U.S.C. § 20507(i)(1). Contrary to Defendant's motion, Plaintiff is not pressing that claim and has sought three subclasses of records which are facially <u>not</u> DMV records in the Complaint.

10

2010) (denying defendants 12(b)(6) motion in NVRA public inspection case); *Project Vote/Voting for America v. Long*, 813 F.Supp.2d 738, 742-43 (E.D. Va. 2011) (granting summary judgement for plaintiff/requestor in NVRA public inspection rights case); *Project Vote v. Kemp*, No. 1:16-cv-2445-WSD, 2016 WL 5092512, ___ F. Supp.3d ___, *11-14, (N.D. Ga., Sept. 20, 2016) (denying defendant's motion to dismiss in NVRA public inspection case and granting injunctive relief to plaintiff records requestor).

There can be no debate that "the NVRA provides a public right to information." *Project Vote/Voting for America v. Long*, 752 F. Supp. 2d at 703. Plaintiffs therefore "need show [no] more than that they sought and were denied specific agency records." *Id.* at 703 (internal citations omitted) (brackets in original). The two *Project Vote* rulings in the same litigation regarding public inspection rights under the NVRA by the United States District Court for the Eastern District of Virginia as well as the Fourth Circuit's affirmation in *Project Vote* strongly support denial of Defendant's motion. In *Project Vote*, plaintiffs sought voter registration and list maintenance records, namely voter registration forms. *Id*. at 699. Defendants there raised similar arguments to the arguments now being raised by the Defendant in this case— namely, that the NVRA did not require the disclosure of the requested information and various other federal statutes and state exemptions superseded NVRA public inspection rights. All three opinions by the district court and Fourth Circuit Court of Appeals in *Project Vote* are contrary to the Defendant's position.

In the first opinion in *Project Vote*, the district court denied a 12(b)(6) motion to dismiss. As a preliminary matter "the court must first determine what constitutes a program or activity conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Project Vote/Voting for America v. Long*, 752 F. Supp. 2d at 705. In this case, Plaintiff

seeks records specifically related to activities aimed at ensuring the accuracy of the official lists of eligible voters, namely whether certain registrations were examined or canceled due to problems with citizenship status. It is hard to imagine a record more germane to public inspection rights of the NVRA. The "process by which the Commonwealth determines whether a person is eligible to vote certainly falls within the purview of the federal statute, as such a process, by its very nature, is designed to ensure that the Commonwealth's lists are current and accurate." *Id*. at 706.

The district court rejected the defendant's arguments in *Project Vote* that disclosure under the NVRA of certain personally identifying information, such as names of registrants subject to cancellation, would frustrate the purposes of the NVRA.

> The court disagrees. As a general matter, the statute identifies the information which Congress specifically wished to keep confidential, and sections of the statute require that the state inform applicants that such information will be kept confidential and used for limited purposes. . . . **Similarly, the statute explicitly requires that other information related to voter registration, which to some persons may be considered sensitive, be disclosed to the public.** See 42 U.S.C. § 1973gg–6(i)(2) (subjecting to disclosure lists including the "names and addresses" of persons to whom notices are sent regarding their removal from the voter rolls.)

*Project Vote/Voting for America v. Long*, 752 F. Supp. 2d at 710 (emphasis added). This is precisely the sort of information the Plaintiff requested in the three subclasses of information sought— including names of registrants who received notices of possible citizenship defects and the ultimate disposition of those inquiries and the date of disposition.

In granting the plaintiff's motion for summary judgment in *Project Vote*, the United States District Court for the Eastern District of Virginia also rejected the defense that public inspection rights were inconsistent with other federal statutes, and should so again here. "The court disagrees with this position. The instant dispute only involves the proper interpretation of

the NVRA's Public Disclosure Provision. Disclosure of the completed voter registration applications does not implicate" either the Military and Overseas Voter Empowerment Act or Help America Vote Act.[4] *Project Vote/Voting for America v. Long*, 813 F. Supp. 2d at 743. The district court also specifically rejected the defense that various state laws prohibited the inspection of election records: "Furthermore, to the extent that any Virginia law, rule, or regulation forecloses disclosure of completed voter registration applications with the voters' SSNs redacted, the court FINDS that it is preempted by the NVRA." *Id.* If Virginia law prohibits disclosure of documents pertaining to list maintenance activity, that state statute is preempted.

Defendant's effort to narrow the scope of the holdings in *Project Vote* should be rejected. Remember, in denying the defendant's 12(b)(6) motion to dismiss in *Project Vote*, the court considered it an elementary question that records related to actual list maintenance and registrant removal programs were unquestionably subject to disclosure under the NVRA. *Project Vote/Voting for America v. Long*, 752 F. Supp. 2d at 706. The plaintiff sought information beyond actual list maintenance and registrant removal records— namely the voter registration forms themselves. At issue in *Project Vote* was whether underlying voter registration forms (some of which were likely filled out in a motor vehicle agency) were also subject to disclosure even though they were not specifically mentioned in the NVRA disclosure provisions.

The district court ruled against the defendant and held that the NVRA reaches beyond mere list maintenance records. Whether records related to list maintenance and cancellation of registrations were subject to disclosure was not a close call. The court relied on the plain text of the statute and ruled that the records subject to disclosure were expansive. "As the statute

---

[4] 52 U.S.C. § 20301, *et seq.*, and Pub.L. No. 107–252, 116 Stat. 1666, respectively.

13

requires disclosure of 'all records' relating to voter registration procedures, *a fortiori* voter registration applications, which obviously so relate, must also be disclosed." *Project Vote/Voting for America v. Long*, 752 F. Supp. 2d 697 at 706 n.14. Thus, the court rejected the defendant's 12(b)(6) motion to dismiss because NVRA public inspection rights superseded any state created exemptions and were not in conflict with other federal laws. Accordingly, even registration forms were subject to disclosure.

Defendant's argument that *Project Vote* "is factually distinguishable from the requested information in the current matter" (Mot. to Dismiss ¶ 23) somehow manages to misunderstand the posture of *Project Vote* and the fact no party in that case disputed that list maintenance documents detailing the processing of registrant cancellations are subject to disclosure under NVRA. *Project Vote* was a dispute about whether voter registration forms are also list maintenance records. Defendant somehow misunderstands this central characteristic of *Project Vote*.

After denying a motion to dismiss, the United States District Court for the Eastern District of Virginia subsequently granted *summary judgment to the requesting NVRA plaintiff* in the second *Project Vote* opinion. *Project Vote/Voting for America v. Long*, 813 F.Supp.2d at 742-43. Defendants there sought to treat an NVRA public inspection request like a Virginia Freedom of Information Act request and limit actual physical inspection rights. The district court rejected the defense: "Additionally, to the extent that the Virginia statute limits the availability of the Requested Records to the public for inspection and photocopying, it is superseded by the NVRA, pursuant to the Supremacy Clause of the United States Constitution." *Project Vote/Voting for America v. Long*, 813 F.Supp.2d at 741.

14

In granting summary judgment to the plaintiff-record requestor, the district court again interpreted the NVRA public inspection rights broadly. A "program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." *Id.* at 742 (internal citation omitted). The three subclasses of information sought by the Plaintiff are virtually synonymous with what the *Project Vote* court held is subject to disclosure under NVRA.

In entering injunctive relief for the requesting plaintiff in *Project Vote*, the United States District Court for the Eastern District of Virginia ordered the release of all requested information, save for social security numbers, and ordered that "the defendants will need to remove language on Virginia's voter registration application that claims the application is not subject to public disclosure." *Project Vote/Voting for America v. Long*, 813 F.Supp.2d at 746. Thus, the district court found that there could be no genuine issue of material fact when a defendant election official denies public inspection rights to any list maintenance record or voter registration form that does not include social security numbers and granted the plaintiff summary judgment.

The Fourth Circuit Court of Appeals affirmed the district court's denial of the defendant's motion to dismiss and grant of summary judgment to a plaintiff requestor under NVRA. *Project Vote v. Long*, 682 F.3d 331, 334-335 (4th Cir. Va. 2012).

> Finally, as explained above, Section 8(i)(1) of the NVRA mandates public disclosure of voter registration activities. It generally requires states to make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.

15

*Id*. at 334 (internal citations and quotations omitted). The court rejected the argument that only "voter removal" records were subject to disclosure and held the reach of documents subject to inspection included voter registration forms. "First, the process of reviewing voter registration applications is a 'program' and 'activity.' Under Virginia law, election officials must examine completed voter registration applications and register applicants that possess the necessary qualifications." *Id*. at 335. It again bears mention that both the district court and Fourth Circuit found it a settled question that "voter removal" records of the sort sought by Plaintiff here are certainly within the reach of the NVRA, even if Defendant seeks to "factually distinguish" *Project Vote* from this case. Defendant's effort to limit the reach of the *Project Vote* cases is misguided.

The court noted that voter registration forms were subject to disclosure because evaluating their completeness was "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* The importance of disclosing records regarding "accuracy" and "currency" were the touchstones of public disclosure requirements under the NVRA to the Fourth Circuit. Records related to the accuracy and the currency of the registration lists simply must be disclosed. Records related to whether registrants were removed for defective citizenship status is squarely within this obligation.

"Finally, the fact that [Section 8(i)(1)] very clearly requires that '**all records**' be disclosed brings voter registration applications within its reach." *Project Vote v. Long*, 682 F.3d at 336 (emphasis added). The Fourth Circuit went further on this point: "As this court has recognized, 'the use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth.'" *Id.* (brackets in original). "Because the NVRA requires disclosure of all materials described in Section 8(i)(1), including voter registration records,

16

defendants must permit inspection of the completed applications, as instructed by the district court."[5]

The Fourth Circuit lastly rejected the defendant's claim that other federal statutes prohibit the disclosure of information for the same statutory construction reasons this Court should reject Defendant's similar defense: "Appellants' argument ignores the plain language of the MOVE Act, which expressly limits the application of its security and privacy provisions to personal data conveyed during the voter form request process." *Project Vote v. Long*, 682 F.3d at 338. For the reasons discussed above, the plain language of the statute Defendant relies on to block release of information offers no defense.

The Fourth Circuit held that the importance of transparency in the election process through NVRA disclosure outweighs any privacy concerns. "Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections." *Id.* 339-40. As Defendant does here in this case before this Court regarding the public disclosure provisions of the NVRA, "[i]n the end, appellants ask us to revisit issues already resolved by the Congress." *Project Vote v. Long*, 682 F.3d 331, at 340.

Lastly, Defendant could resolve this dispute by providing a document that would take minutes to print from computers in Defendant's office, as many other local general registrars have already done for the Plaintiff. The fact that the data is in electronic form does not absolve

---

[5] Nor was the court willing to entertain that a list in the NVRA of some documents subject to disclosure precluded documents not listed. "First, the statute clearly states that 'all records' falling under Section 8(i)(1) must be publicly disclosed, not just those explicitly listed in Section 8(i)(2). Moreover, as the district court recognized at the motion to dismiss hearing, the term 'shall include' sets 'a floor, not a ceiling.'" *Project Vote v. Long*, 682 F.3d at 337 (internal citations omitted).

17

Defendant from compliance with the NVRA. The district court denied a motion to dismiss and granted summary judgment for a plaintiff-NVRA requestor in the recent case of *Project Vote v. Kemp*, No. 1:16-cv-2445-WSD, 2016 WL 5092512, ___ F. Supp.3d ___, *11-*14, (N.D. Ga. Sept. 20, 201. There, the court rejected the defense that electronic records are not subject to disclosure. "Interpreting 'records' to exclude information contained within electronic databases also would allow States to circumvent their NVRA disclosure obligations simply by choosing to store information in a particular manner. Given the ubiquity and ease of electronic storage, this would effectively render Section 8(i) a nullity." *Id.* at *12. The district court accordingly denied a motion to dismiss and entered injunctive relief against the defendant ordering the disclosure of records.

For these reasons, Defendant's motion to dismiss should be denied.

/s/
J. Christian Adams (Va. Bar # 42543)
Attorney for Public Interest Legal Foundation, Inc.
300 N. Washington Street
Suite 405
Alexandria, Virginia 22314
(703) 963-8611
Fax: (888) 815-5641
adams@publicinterestlegal.org

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of December, 2016, a true and correct copy of the foregoing Memorandum Supporting Response in Opposition to Motion to Dismiss Pursuant to Rule 12(b)(6) was served on all parties via this Court's ECF system, which notified the following counsel of record:

William W. Tunner, Esq. (VSB No. 38358)
ThompsonMcMullan
100 Shockoe Slip
Richmond, VA 23219-4140
Phone: (804) 649-6205
Fax: (804) 780-1813
E-mail: wtunner@t-mlaw.com
*Counsel for Defendant*